William P. Rubley, Esquire
Cory C. Sidelsky, Esquire
Bar ID Nos.: 019192002/ 107322014
wrubley@subranni.com
csidelsky@subranni.com
SUBRANNI ZAUBER, LLC
Willow Ridge Exec. Officepark
750 Route 73 South, Suite 307B
Marlton, NJ 08053
(856) 985-3086
*Attorneys for Defendants, Anderson Ludgate*
*Consulting, LLC and Tricia Flanagan*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PRAKASH V. RAO, ANANTH RAO and VKS ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>ANDERSON LUDGATE CONSULTING, LLC, TRICIA FLANAGAN, and John Does 1-20 who are individuals who identities are not yet known who have harmed Plaintiff,<br><br>Defendants. | Civil Action<br><br>DOCKET NO.: 15-03126-SRC-CLW<br><br>**CERTIFICATION IN SUPPORT OF MOTION TO DISMISS** |

    I, Tricia Flanagan, individually and as a member of Defendant, Anderson Ludgate Consulting, LLC ("ALC") in the above entitled matter, in support of Defendants' Motion to Dismiss, certify as follows:

    1.    ALC was established as a pharmaceutical market research company.

    2.    Prior to meeting Plaintiff, Prakash Rao ("Prakash"), Nicholas Kouyialis ("Kouyialis") and I were the only members of ALC.

    3.    I met Prakash at a Vistage International ("Vistage") meeting in Princeton, New Jersey after presenting my "process issue" to the Vistage Trusted Advisor Committee. Vistage is

1

a leadership and coaching company which offers a confidential platform for business officers and executives to solve problems, evaluate opportunities and work on an assortment of strategic and operational issues.

4. Clients of Vistage were discouraged from soliciting business from one another. However, Prakash totally disregarded this when he approached me to request my marketing services to sell his book, which I declined. At that point, he offered his services to ALC.

5. After convincing me that he could help to grow ALC by offering a unique, desirable, and unprecedented marketing research model to ALC's potential clients, ALC took Prakash in as a member or partner. Prakash represented that his statistical model would revolutionize the pharmaceutical market research industry, and ALC relied on his representation.

6. I emphasized to Prakash that ALC was in its infancy and had no clients, let alone any profits. Prakash understood and acknowledged that ALC was a start-up and was never profitable.

7. Prakash entered into a partnership agreement (the "Agreement") with ALC, which provided that Prakash was entitled to 1/3 of the annual profits of ALC to be paid on a quarterly basis. A true and correct copy of the Agreement is attached hereto as Exhibit "A".

8. Unfortunately, ALC was never profitable, and therefore, no quarterly distributions were ever made to him or any other member.

9. As a member of ALC, I also did not earn any distributions or income from the company. Nor did Kouyialis, who was the other member of ALC.

10. Prakash, Kouyialis, and I, by and through ALC, partnered together with the understanding that ALC was in its infancy and had no clients, ergo, no profits.

11. We all had other jobs and we treated our positions with ALC as secondary positions until the company could get its feet off the ground, which never happened while Prakash was a partner or member.

12. Prakash maintained his employment with VKS, and would occasionally check in with Kouyialis and me to inquire about any new developments with ALC.

13. Prakash's partnership with ALC was by no means a full-time position for him. Rather, Prakash focused on his other business, VKS, and even handed out his VKS business cards while at networking events with me.

14. Prakash was brought in by ALC to develop a statistical model that quantified qualitative data for the pharmaceutical industry based on his representations that he could develop such a model catered toward the industry; however, he never developed any such model, but instead offered only conceptual ideas that he learned through his past experiences outside of the pharmaceutical industry. These conceptual ideas were not novel or unique. Prakash also represented that he had an existing physician-based database that he and he wife previously created that could be used for the benefit of ALC to gain clients in the pharmaceutical industry. ALC made him a partner or member based on these representations.

15. Prakash never lived up to his expectations, nor did he fulfill his obligations on behalf of ALC. To this point, he never provided ALC with any statistical model that quantified qualitative data in the pharmaceutical industry that ALC could use to gain clients, and therefore, he failed to perform his duties as a partner of ALC. Prakash only gave ALC one piece of material, a PowerPoint presentation, which could not be used by ALC in any productive way. The PowerPoint presentation that he sent to me merely stated general marketing research terms on the PowerPoint slides. Prakash even admitted that he did not cater the slides to the

pharmaceutical industry, which meant that they were useless to ALC, who was seeking to convince potential pharmaceutical clients that its marketing research methods and models differentiated it from other marketing research companies and could provide clients with useful data to target and attract potential clients.

I certify that the above statements are true and correct to the best of my knowledge. I understand that if any statement contained herein is willfully false, I am subject to punishment.

Dated: 4/5/16

Tricia Flanagan
Individually and as Member of ALC