UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PRAKASH V. RAO, ANANTH RAO and VKS
ASSOCIATES, LLC,

               Plaintiffs,

     v.

ANDERSON LUDGATE CONSULTING,
LLC, TRICIA FLANAGAN and John Does 1-
20 who are individuals whose identifies are not
yet known who have harmed Plaintiff,

               Defendants.

CIVIL ACTION NO.: 2:15-CV-03126-SRC-CLW

Civil Action

---

**MEMORANDUM OF LAW OF PLAINTIFFS
IN OPPOSITION OT DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

---

**DANIEL S. EICHHORN, ESQ. DSE-5505
SOKOL BEHOT, LLP
433 HACKENSACK AVENUE
HACKENSACK, NEW JERSEY 07601
(201) 488-1300
(201) 488-2460 (TELECOPIER)
Attorneys For Plaintiffs**

On the Brief
Daniel S. Eichhorn

# **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ........................................................................ 1

PROCEDURAL HISTORY ............................................................................. 2

STATEMENT OF FACTS .............................................................................. 4

ARGUMENT ................................................................................................. 4

    POINT I ..................................................................................................... 4

    PLAINTIFFS' CROSS-MOTION FOR LEAVE TO FILE THEIR FIRST
    AMENDED COMPLAINT SHOULD BE GRANTED .................................... 4


    POINT II .................................................................................................... 7

    DEFENDANTS' MOTION TO DISMIS IN PART PLAINTIFFS'
    COMPLAINT SHOULD BE DENIED. ....................................................... 7

    A.    The Law Is Clear That Defendants' Motion To Dismiss Does
    <u>Not</u> Satisfy The Legal Standards For The Granting Of A Motion To
    Dismiss ..................................................................................................... 7

    B.    Defendants' Substantial Reliance In Their Motion On "Facts"
    And "Allegations" That Are Extraneous To What Is Plead In The
    Complaint Is Improper And Does Not Support The Granting Of
    Their Motion To Dismiss ......................................................................... 8


    POINT III ................................................................................................ 10

    PLAINTIFFS' ASSERT VALID CLAIMS FOR BOTH FRAUD AND
    NEGLIGENT MISREPRESENETATION AGAINST DEFENDANTS. .......... 10

    A.    The Claims Of Fraud And Negligent Representation Are Valid
    Because The Falsities Were Based On Statements Flanagan Knew
    Were False At The Time She Made The Statement ................................. 10

    B.    Plaintiffs' Complaint Plead Their Claims For Fraud And
    Negligent Misrepresentation With Particularity .................................... 13

POINT IV ................................................................................ 15

PLAINTIFFS' ASSERT CONMGNIZABLE AND VALID CLAIMS AGAINST FLANAGAN AND THE MOTION SEEKING TO DISMISS THE CLAIMS AGAINST HER SHOULD BE DENIED. ............................ 15

A.    Plaintiff Has Plead Cognizable Claims Against Defendant Flanagan Individually For The Wrongs That Are Alleged That She Committed Directly Against Plaintiffs ................................................... 15

1.    The Claims Are Cognizable Against Flanagan Individually For Fraud And Negligent Misrepresentation Are Valid As To Her Personally ......................................................................................... 15

2.    The Claims Are Cognizable Against Flanagan Individually For Breach Of The Agreement She Made Directly With Mr. Rao To Promote His Business In Return For His Assistance With Her Business .......................................................................................... 16

B.    The Fact That ALC Is An LLC, Does Not Protect Flanagan From Liability To Individual Wrongs She Committed Against The Plaintiff ........................................................................................... 16

C.    The Law Regarding Partnerships Is Not Applicable To The Within Matter And Provides No Basis For Dismissal Of Plaintiff's Complaint ....................................................................................... 18

POINT V ................................................................................. 20

NONE OF PLAINTIFFS' CLAIMS ARE BARRED BY THE EXONOMIC LOSS DOCTRINE. ............................................................................. 20

A.    It Is Premature To Apply Economic Loss Doctrine To Plaintiff's Claims ........................................................................... 20

B.    As Plaintiffs Have Plead Their Tort Claims In The Alternative, Defendants' Effort To Utilize The Economic Loss Doctrine Should Be Denied ......................................................................... 21

C.    Claims For Fraud In The Inducement Are Not Barred Under The Economic Loss Doctrine ............................................................ 22

D.    The Economic Loss Doctrine Does Not Bar Plaintiffs' Tort Claims In The Initial Complaint Or In The Amended Complaint For Theft/Conversion Of Trade Secrets And Services .................................. 25

POINT VI ........................................................................................ 26

TO THE EXTENT ANY OF PLAINTIFF'S CLAIMS ARE DISMISSED, THEY SHOULD BE DISMISSED WITHOUT PREJUDICE TO PLAINTIFF'S RIGHT TO AMEND THEIR COMPLAINT. ........................... 26

CONCLUSION .................................................................................... 27

## TABLE OF AUTHORITIES

**Page(s)**

CASES

701 Penhorn Ave. Associates, Inc. v. J. Fanok Holdings,
    LLC,
    No. A-2921-11T3, 2013 WL 709125
    (N.J. Super. Ct. App. Div. Feb. 28, 2013) ....................17

Abdelmonem v. Buona Fortuna, Inc.,
    No. CIV.A. 13-3070 CCC, 2015 WL 2448903
    (D.N.J. May 21, 2015)32 (App. Div. 1992) .................4, 6

Bair v. City of Atl. City,
    100 F. Supp. 2d 262 (D.N.J. 2000) ...........................5

Berger & Montague, P.C. v. Scott & Scott, LLC,
    153 F. Supp. 2d 750 (E. D. Pa. 2001) .......................22

Berk v. HMC,
    No. CIV.A. 07-181 JLL, 2009 WL 467849
    (D.N.J. Feb. 24, 2009) .....................................26

Bussiculo v. Babcock Power, Inc.,
    No. CIV.A. 13-7192 JLL, 2014 WL 4611544
    (D.N.J. Sept. 15, 2014) .....................................5

Capital Inv. Funding, LLC v. Lancaster Grp. LLC,
    No. CIV.A. 8-4714 JLL, 2015 WL 4915464
    (D.N.J. Aug. 18, 2015) ..................................14, 20

Christidis v. First Penn. Mortgage Trust,
    717 F. 2d 96 (3d Cir. 1983) ................................13

Crump v. Pasaic Cty.,
    No. 2:14-2365 WHW, 2015 WL 1034653
    (D.N.J. Mar. 9, 2015) .......................................5

DG3 N. Am., Inc. v. Labrador Regulated Info. Transparency,
    Inc.,
    No. CIV.A. 14-5123 SRC, 2014 WL 5844340
    (D.N.J. Nov. 12, 2014) ....................................7, 8

Dole v. Arco Chemical Co.,
    921 F.2d 484, 487 (3d Cir. 1990) ...........................5

Fairlawn Indus. Properties, LLC v. H.J. Heinz Co., L.P.,
    No. 2:15-CV-1904 WHW-CLW, 2015 WL 4640624
    (D.N.J. Aug. 4, 2015) .................... 7, 8, 10, 11, 12, 24

Foman v. Davis,
    371 U.S. 178, 83 S. Ct. 227 (1962) ......................... 5

Freedom Waste Sols., Inc. v. Family Dollar,
    No. 15-CV-4756 (SRC), 2015 WL 5996183
    (D.N.J. Oct. 14, 2015) ................................... 23

G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.,
    18 F.Supp. 3d 583 (D.N.J. 2014) .......................... 23

Hedges v.United States,
    404 F.3d 744 (3d Cir. 2005) ............................... 7

IDT Corp. v. Unlimited Recharge, Inc.,
    No. CIV.A. 11-4992 ES, 2012 WL 4050298
    (D.N.J. Sept. 13, 2012) .................................. 21

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997) .............................. 8

In re U.S. Mortgage Corp.,
    491 B.R. 642 (Bankr. D.N.J. 2013) ......................... 5

In re Young,
    384 B.R. 94 (Bankr. D.N.J. 2008) .......................... 9

Kam Int'l v. Franco Mfg. Co., Inc.,
    No. CIV.A. 2:10-02733, 2010 WL 5392871
    (D.N.J. Dec. 22, 2010) ................................... 25

Kenney v. MN2 Worldwide, LLC,
    No. CIV.A. 12-1059 SRC, 2013 WL 592149
    (D.N.J. Feb. 13, 2013) ................................... 17

La Coe v. Pennsylvania State Univ.,
    No. 4:14-CV-01818, 2015 WL 2095471
    (M.D. Pa. May 5, 2015) .................................... 8

Lo Bosco v. Kure Eng'g Ltd.,
    891 F. Supp. 1020 (D.N.J. 1995) ...................... 10, 22

Marascio v. Campanella,
    298 N.J. Super. 491 (App. Div. 1997) ..................... 17

McTernan v. City of York,
    577 F.3d 521 (3d Cir. 2009) .................................. 7

Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.,
    694 F.3d 340 (3d Cir. 2012) ................................. 7

Ross v. Celtron Int'l, Inc.,
    494 F. Supp. 2d 288 (D.N.J. 2007 ........................... 23

Seville Indus. Mach. Corp.v. Southmost Mach. Corp.,
    742 F.2d 786 (3d Cir. 1984) ................................ 13

Shane v. Fauver,
    213 F.3d 113 (3d Cir. 2000) ................................. 5

Shapiro v. Barnea,
    No. CIV. 06-811 (JBS), 2006 WL 3780647
    (D.N.J. Dec. 21, 2006) ................................. 13, 22

Snyder v. Baxter Healthcare, Inc,
    393 F. App'x 905 (3d Cir. 2010) ......................... 7, 8

State v. Ventron Corp.,
    94 N.J. 473 (1983) ........................................ 17

State Capital Title & Abstract Co. v. Pappas Bus. Servs.,
LLC,
    646 F. Supp. 2d 668 (D.N.J. 2009) ......................... 14

Verni v. Harry M. Stevens, Inc.,
    387 N.J. Super. 160 (App. Div. 2006) ...................... 17

Walensky v. Jonathan Royce Int'l, Inc.,
    264 N.J. Super. 276 (App. Div. 1993) ...................... 18

**COURT STATUTES**

N.J.S.A. Sec. 42:1A-10 (a)(3)(b) ..............................19

N.J.S.A. Sec. 56:15-1 ........................................1


**COURT RULES**

Fed. R. Civ.P. 8 .............................................6

Fed. R. Civ.P. 8(a) .........................................22

Fed. R. Civ.P. 8(d) .........................................21

Fed. R. Civ.P. 9(b) ...............................6, 13, 15

Fed. R. Civ.P. 12(b)(6) .......................2,4,7, 16

## PRELIMINARY STATEMENT

The within memorandum of law is made on behalf of plaintiffs, Prakash V. Rao ("Prakash"), Ananth Rao and VKS Associates, LLC ("VKS"), (collectively "Plaintiffs") in support of Plaintiffs' Cross-motion for leave to file an amended complaint and in Opposition to the Motion to Dismiss in part Plaintiffs' Complaint filed by defendants, Anderson Ludgate Consulting, LLC ("ALC") and Tricia Flanagan ("Flanagan"), (collectively "Defendants").

The law is clear that Motions for Leave to file an amended complaint should be freely granted. Here the motion for leave to file Plaintiffs' First Amended Complaint is being filed just 27 days after Defendants' filed their Motion to Dismiss. The First Amended Complaint differs from the initial complaint, in part, as follows:

(1)     The Amended Complaint clarifies the exclusive role defendant, Tricia Flanagan had in the dealings between Plaintiffs and Defendants. It sets fort that it was Flanagan who personally made the false representations to Plaintiffs, and it was Flanagan who made the promises and agreements with Plaintiffs.

(2)     The Amended Complaint clarifies that the causes of action being plead are being plead in the alternative pursuant to Fed.R.Civ.P. 8. The Amended Complaint alleges contract claims and quasi-contract claims, as well as tort claims that may request relief that overlaps. The Amended Complaint provides that these various causes of action are being pled in the alternative.

(3)     The Amended Complaint clarifies in Count Twelve that Plaintiffs are asserting that Flanagan, in addition to being individually liable, is personally liable by virtue of the piercing of the veil of ALC.

(4)     The Amended Complaint also clarifies in Count Thirteen that Plaintiffs are seeking relief under the New Jersey Trade Secret Act, N.J.S.A. Sec. 56:15-1, *et seq.* in addition to common law remedies for the theft of their trade secrets.

The Defendants' Motion to Dismiss in part Plaintiffs' Complaint should be denied in full for the following reasons:

(1)    The initial Complaint, and the proposed Amended Complaint plead cognizable and plausible claims on their face that support the granting of relief in Plaintiffs' favor.

(2)    Defendants' reliance on alleged "Facts" that are not pled in the complaint, and Defendants' disputing of facts plead in the complaint is not a basis for dismissing a complaint pursuant to Fed.R.Civ.P. 12(b)(6).

(3)    The initial Complaint and Amended Complaint assert cognizable claims against Flanagan individually and Defendants' reliance on law regarding limited liability companies and partnerships, is misplaced and does not support the dismissal of claims as against Flanagan.

(4)    The initial Complaint and Amended Complaint set forth cognizable claims for fraud in the inducement, fraud in performance and negligent misrepresentation and plead the same with particularity.

(5)    Contrary to Defendants' claim the economic loss doctrine is not a basis for the denial of Plaintiffs' tort claims for fraud in the inducement, fraud in performance, negligent misrepresentation, conversion and theft of trade secrets and services and for negligence and breach of fiduciary duty. The claims are plead in the alternative to Plaintiffs' breach of contract claim in light of the fact that the Court may conclude that one or more of the contracts plead by Plaintiffs were no valid contracts. Until discovery is complete it is clearly premature to dismiss any of Plaintiffs' tort claims based on the possibility they may be duplicative of their breach of contract of claims.

For the reasons set forth herein, Plaintiffs' Cross-Motion for Leave to Amend should be granted and Defendants' Motion to Dismiss in part Plaintiffs' Complaint should be denied.

## **PROCEDURAL HISTORY**

A brief procedural history is provided to set forth the timeliness of Plaintiffs' Cross-Motion for Leave to file their First Amended Complaint.

On  May 4, 2015, Plaintiffs filed their initial complaint in the within suit against defendants, Patricia Flanagan and Anderson Ludgate Consulting , LLC. (A copy of the initial complaint is attached as Exhibit "A" to the May 2, 2016 certification of Daniel S. Eichhorn, Esq.

("Eichhorn Cert.")). On May 6, 2015, this Court filed an Order to Show Cause directing Plaintiffs to show cause as to why the suit should not be dismissed for lack of subject matter jurisdiction and sought for Plaintiffs to set forth whether the members of the defendant LLC had diversity of citizenship from Plaintiffs. (See entry No. 4 on the docket for this matter Docket No.: 15-03126-SRC-CLW).

By submission entered June 13, 2015, Plaintiffs' counsel advised the Court that counsel had received communications from an attorney representing ALC advising that there was at that time a member of ALC who was a resident of New Jersey. Id. at entry No. 7. In light of this information counsel for Plaintiffs advised the Court that there was not diversity of citizenship and the suit was voluntarily dismissed without prejudice on June 17, 2015. Id. at entry No. 7-8.

A few months later, counsel for Plaintiffs was advised by counsel for the purported member who resided in New Jersey that the purported member had not been a member of ALC since March 2013, and was not a member at the time the suit was commenced. Id. at entry No. 9 (Specifically attachment No. 3 which is the certification of counsel). Thereafter, counsel for Plaintiffs made a Motion to Reinstate the suit which was granted. Id. at entry No. 9 and 10.

As Defendants still did not file an appearance in this action, Plaintiffs filed a Notice of Default which was entered on February 24, 2016. Id. at entry No. 15. Only after the Notice of Default was entered did counsel for Defendants appear. Plaintiffs agreed to vacate the default. Id. at entry No. 19. Defendants' counsel filed their first appearance on March 21, 2016 and their Motion to Dismiss in part Plaintiffs' Complaint[1] on April 5, 2016. Id. at entry Nos. 17 and 21.

---

[1] While Plaintiffs do not believe it is relevant to the material issues before the Court, it is important to note that on page 14 of Defendants' Brief they erroneously claim that Plaintiffs do not assert a claim for an accounting. As set forth in the Ninth Count of the initial Complaint Plaintiffs sought "Equitable Relief, Injunctive Relief, Constructive Trust And Accounting." (See Exhibit "A" to the Eichhorn Cert.) In the Ninth Count Plaintiffs asserted that they were "entitled to an accounting of all sales, revenues, profits of Anderson Ludgate from July 2013 to the present, and of Defendants' utilization of Plaintiffs' work product and intellectual property." Id. Furthermore, Plaintiffs again asserts the same facts and claims for relief in the Eleventh Count of their Amended Complaint. (See Exhibit "B" to the Eichhorn Cert.)

Twenty Six (26) days later, Plaintiffs filed the within Cross-Motion for Leave to File their First Amended Complaint and Opposition to Defendants' motion.

## STATEMENT OF FACTS

As the applications before this Court consist of a Cross-Motion for Leave to File an Amended Complaint and a Motion to Dismiss in part Plaintiff's Complaint made pursuant to Fed.R.Civ.P. 12(b)(6), to address the same, Plaintiffs will rely upon the facts set forth in its initial complaint and in their proposed First Amended Complaint.

While it is not relevant to the applications pending before the Court, as to the various allegations made by Flanagan in her certification (all of which are outside the complaint) and repeated in Defendants' brief, Plaintiffs direct the Court to the certification of plaintiff Prakash Rao ("Prakash") that briefly sets forth that Flanagan's allegations are untrue and are in dispute with the facts plead in the initial and amended complaints. Once the litigation proceeds Plaintiffs believe that the evidence produced in discovery will reveal that the allegations being made by Flanagan are untrue.

## ARGUMENT

## POINT I

## PLAINTIFFS' CROSS-MOTION FOR LEAVE TO FILE THEIR FIRST AMENDED COMPLAINT SHOULD BE GRANTED

Pursuant to Fed.R.Civ.P. 15(a)(2) if a responsive pleading has been served a party may amend the party's pleading by leave of court or by written consent of the adverse party. The Rule further provides that "leave shall be freely given when justice so requires". The courts also hold that "[p]ursuant to Fed.R.Civ.P. 15(a)(2), leave to amend the pleadings is generally granted freely." Abdelmonem v. Buona Fortuna, Inc., No. CIV.A. 13-3070 CCC, 2015 WL 2448903, at *1 (D.N.J. May 21, 2015).

"A liberal standard" governs the granting of leave to file amended pleadings. In re U.S. Mortgage Corp., 491 B.R. 642, 678 (Bankr. D.N.J. 2013) citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). In fact, "[t]he Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities." [emphasis added] Bair v. City of Atl. City, 100 F. Supp. 2d 262, 265 (D.N.J. 2000) citing Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir.1990).

"The federal rules allow for liberal amendments to pleadings" and the "rationale for this stems from the 'principle that the purpose of pleading is to facilitate a proper decision on the merits,' and that if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits." Crump v. Passaic Cty., No. 2:14-2365 WHW, 2015 WL 1034653, at *5 (D.N.J. Mar. 9, 2015) quoting Foman v. Davis, supra. at 182.

Furthermore, "if a claim is vulnerable to dismissal under Rule 12(b)(6) and the plaintiff moves to amend, 'leave to amend generally **must be granted** unless the amendment would not cure the deficiency.'" [emphasis added] In re U.S. Mortgage Corp., supra. at 678 quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir.2000).

Finally, "[t]he burden is generally on the party opposing the amendment to demonstrate why the amendment should not be permitted." Bussiculo v. Babcock Power, Inc., No. CIV.A. 13-7192 JLL, 2014 WL 4611544, at *4 (D.N.J. Sept. 15, 2014) citing Foman v. Davis, supra. "Leave to amend under Rule 15 should be denied **only** in certain circumstances, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or clear futility of the amendment." [emphasis added] Bair v. City of Atl. City, supra at 265. "However, where there is an absence of

undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted." Abdelmonem v. Buona Fortuna, Inc., supra.

Here, Plaintiffs seek leave to file for the first time an amended complaint in this matter. The request for the leave is being made just 27 days after Defendants' first appeared in this matter. Leave is sought, in part, to file an amended complaint to address the allege deficiencies in the initial complaint alleged by the Defendants. Leave to amend is not made in bad faith, and will not prejudice Defendants who just appeared in this matter.

Finally, the causes of action set forth in the proposed Amended Complaint are not futile, are cognizable under the law, and the facts plead provide for Plaintiffs' entitlement for the relief sought under each Count. Several of the causes of action specifically state in the Amended Complaint that they are being plead in the alternative and the other causes of action should be read as being in the alternative to the extent they are inconsistent with any other causes of action plead as permitted by Fed.R.Civ.P. 8. Therefore, even to the extent the claims may overlap or contradict in part other claims it is clearly proper to plead the same. Finally, the claims for fraud and negligent misrepresentation plead in the First, Second and Fourth Counts are pled with sufficient specificity as required by Fed.R.Civ.P. 9(b).

For these reasons Plaintiffs' Cross-motion for leave to file their First Amended Complaint should be granted.

## POINT II

**DEFENDANTS' MOTION TO DISMISS IN PART PLAINTIFFS' COMPLAINT[2] SHOULD BE DENIED.**

**A.   THE LAW IS CLEAR THAT DEFENDANTS' MOTION TO DISMISS DOES <u>NOT</u> SATISFY THE LEGAL STANDARDS FOR THE GRANTING OF A MOTION TO DISMISS.**

On a Motion to Dismiss made pursuant to F.R.C.P. 12(b)(6) the movant "bears the burden of showing that no claim has been presented." <u>DG3 N. Am., Inc. v. Labrador Regulated Info. Transparency, Inc.</u>, No. CIV.A. 14-5123 SRC, 2014 WL 5844340, at *3 (D.N.J. Nov. 12, 2014) (quoting in part <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir.2005)). "In deciding a motion to dismiss, <u>all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.</u>" [emphasis added] <u>McTernan v. City of York</u>, 577 F.3d 521, 526 (3d Cir.2009).

In order to defeat a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Snyder v. Baxter Healthcare, Inc.</u>, 393 F. App'x 905, 908 (3d Cir. 2010). "A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Fairlawn Indus. Properties, LLC v. H.J. Heinz Co., L.P.</u>, No. 2:15-CV-1904 WHW-CLW, 2015 WL 4640624, at *2 (D.N.J. Aug. 4, 2015)

A Rule 12(b)(6) motion should only be "granted when it <u>appears to a certainty</u> that no relief can be granted <u>under any set of facts</u> which could be proved." [emphasis added] <u>Nichole Med. Equip. & Supply Inc. v. TriCenturion, Inc.</u>, 694 F.3d 340, 350 (3d Cir.2012).

---

[2]  If Plaintiffs are granted leave to file their Amended Complaint, the facts and causes of action alleged in the Amended Compliant should be reviewed and considered in addressing Defendants' Motion to Dismiss. Even if Plaintiffs' are not granted leave to amend, Plaintiffs' initial complaint by itself asserts sufficient facts and causes of action that require the denial of Defendants' motion.

A review of the facts and allegations plead in Plaintiffs' Amended Complaint make it clear that the pleading states claims that are plausible on their face and facts that support the granting of relief, especially when viewed under the standard set forth above. Defendants have not met the burden required for the granting of their motion to dismiss and therefore it should be denied.

**B.    DEFENDANTS' SUBSTANTIAL RELIANCE IN THEIR MOTION ON "FACTS" AND "ALLEGATIONS" THAT ARE EXTRANEOUS TO WHAT IS PLEAD IN THE COMPLAINT IS IMPROPER AND DOES NOT SUPPORT THE GRANTING OF THEIR MOTION TO DISMISS.**

"[A] Rule 12(b)(6) motion tests the legal sufficiency of the complaint's allegations and is limited to the pleadings in the complaint." La Coe v. Pennsylvania State Univ., No. 4:14-CV-01818, 2015 WL 2095471, at *3-4 (M.D. Pa. May 5, 2015). "A court is generally confined to the four corners of the complaint when evaluating its sufficiency." Fairlawn Indus. Properties, LLC v. H.J. Heinz Co., L.P., supra at *2. In fact, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

"Pursuant to Rule 12(b)(6), affidavits or other peripheral documents are generally not permissible for a district court's consideration because a motion to dismiss attacks claims contained by the four corners of the complaint." Snyder v. Baxter Healthcare, Inc., supra at 907.

In DG3 N. Am., Inc. v. Labrador Regulated Info. Transparency, Inc., supra at *3, the trial court denied the moving parties motion to dismiss where the movant supported the granting of its motion by submitting to the Court movant's own version of the facts. supra at *3. In denying the motion the Court held as follows regarding movant's attempts to go beyond the content of the pleading:

In spite of this axiomatic standard governing the sufficiency of a claim, DG3's attack on the sufficiency of the counterclaims consists almost entirely of the argument that 'there is no *evidence,* beyond highly speculative and unsupported statements, to sustain any of these claims.' [citation omitted] **Rather than engage in any meaningful analysis of the factual allegations actually set forth in Labrador's Counter–Complaint, <u>DG3 presents its own version of events, relying primarily on the affidavit</u> of Mr. Poole. <u>Such extrinsic material has no bearing on this motion and will not be considered by this Court</u>.** <u>See Snyder v. Baxter Healthcare, Inc.,</u> 393 F. App'x 905, 907 n. 4 (3d Cir.2010) ("Pursuant to Rule 12(b)(6), affidavits or other peripheral documents are generally not permissible for a district court's consideration because a motion to dismiss attacks claims contained by the four corners of the complaint."); <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir.1994) (holding that, on Rule 12(b)(6) motion, "**<u>a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record</u>**.").

The movant, here DG3, "bears the burden of showing that no claim has been presented." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir.2005). It has failed to do so.  [emphasis added] <u>Id</u>. at *3.

Defendants' motion relies heavily on the certification submitted by defendant, Tricia Flanagan. In fact pages 6 to 8 (and part of 9) of  Defendants' Brief are almost verbatim recitations of the contents of the certification. In her certification Flanagan provides no actual basis for the dismissal of Plaintiffs' Complaint, instead she disputes the allegations plead in the Complaint, and then she makes her own new allegations against Prakash.

Finally, "if the moving party presents or uses materials not contained in the four corners of the plaintiff's complaint" the motion is not a proper motion to dismiss, and the court in its discretion may decide to convert the motion to one for summary judgment, but in doing so the court must provide all parties sufficient notice of the conversion.  <u>In re Young</u>, 384 B.R. 94, 99 (Bankr. D.N.J. 2008). When discovery is needed to evaluate the claims the court should decline

to convert a motion to dismiss to one for summary judgment. See Fairlawn Indus. Properties, LLC v. H.J. Heinz Co., L.P., supra. at *2.

Discovery has not even commenced in this action. Furthermore, the extraneous allegations contained in Flanagan's certification are factual in nature, and highly disputed by Plaintiffs. It would clearly be improper and premature to convert Defendants' Motion to Dismiss in part the Complaint to one for summary judgment,

## POINT III

**PLAINTIFFS' ASSERT VALID CLAIMS FOR BOTH FRAUD AND NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS.**

    **A.**    **The Claims Of Fraud And Negligent Representation Are Valid Because The Falsities Were Based On Statements Flanagan Knew Were False At The Time She Made The Statements.**

Defendants incorrectly assert in their Motion that Plaintiffs' claims for fraud should be dismissed because the complaint does not plead any misrepresentation of any presently known or past fact by Ms. Flanagan or ALC. This is simply not the case.

The court recognize that fraud in the inducement occurs when there is "a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promise" to enter into the contract. [emphasis added] Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1020, 1032-33 (D.N.J. 1995).

The Amended Complaint sets forth, in part, the following with regard the misrepresentations made by Flanagan to Plaintiffs:

    (1)    the false representations made by Flanagan in December 2013 to Prakash that in 2013 Anderson Ludgate had profits of over $400,000 which she knew at the time she was making the representation was false;

    (2)    the false representations made by Flanagan in December 2013 to Prakash that in 2014 and thereafter Anderson Ludgate would be making profits of over a million dollars which she knew at the time she was making the representation was false;

(3)   the false representations made by Flanagan in December 2013 to Prakash that in 2014 Prakash would be receiving a share of profit of at least $250,000 <u>which she knew at the time she was making the representation was false</u>;

(4)   the false representations by Flanagan in 2013 that she would actively promote Prakash and his consulting business in order to generate more business for VKS <u>when she knew at the time she made the statement that she was not going to undertake such efforts</u>;

(5)   the false representations of Flanagan's that Prakash was going to be paid the salary of $225,00 in 2014 <u>which she knew was false at the time she made the representation</u>;

(6)   the false representation in January 2014 that Anderson Ludgate had a contract with a customer for $3,000,0000 <u>which she knew was false at the time she made the representation</u>; and,

(7)   the false representation by Flanagan that Anderson Ludgate had projected sales of at least $12,000,000 for 2014 <u>which she knew was false at the time she made the representation</u>. [emphasis added] (See paragraph 3 of the First Count of the Amended Complaint attached as Exhibit "B" to the Eichhorn Cert.)

The Amended Complaint clearly pleads that Flanagan knew at the time she made the false statements that they were false and that she intended for Plaintiffs to rely on those false statements. It is properly plead that Flanagan fraudulently induced Plaintiffs to enter into the contracts to perform services and provide work-product in return for compensation. It is also properly plead that after the contract were entered, Flanagan committed fraud in performing the contracts, by continuing to make false representations to Plaintiffs.

In <u>Fairlawn Indus. Properties, LLC v. H.J. Heinz Co., L.P.</u>, No. 2:15-CV-1904 WHW-CLW, 2015 WL 4640624, at *4 (D.N.J. Aug. 4, 2015) the Court denied a Motion to Dismiss Plaintiff's fraud count where the complaint explained the fraud count as follows:

(1)   "Heinz reaffirmed its obligations under the Lease and represented and promised that it would restore the Premises to a good and rentable condition free from damages and defects ..."

(2)     "Heinz encouraged Fairlawn to engage an engineer, at its own cost and expense, to inspect and provide an assessment of the physical damages caused by Heinz during its occupancy and promised to remediate or pay to remediate those damages."

(3)     "Heinz promised to remediate or pay to remediate the odor so that the Premises would return to a 'neutral odor measurement level.'"

(4)     "Heinz knew it had no intention of following through on these promises"

(5)     "Heinz made these representations in order to induce Fairlawn to allow Heinz to continue to occupy and operate in the Premises beyond the October 31, 2014 termination date, avoid paying holdover rent and prevent Fairlawn from taking action long enough so that by November 30, 2014, Heinz would be out of the Premises leaving [Fairlawn] with no choice but to chase Heinz.

(6)     "As a direct result Fairlawn sustained significant money and other damages."

The facts plead herein and in <u>Fairlawn Indus. Properties, LLC v. H.J. Heinz Co., L.P</u> are very similar in nature. Plaintiffs' Amended Complaint and initial complaint clearly set forth sufficient facts showing Flanagan made misrepresentations about present facts.

Defendants' do not claim any other deficiencies in Plaintiffs' fraud or negligent misrepresentation claims. A review of the facts plead in the Amended Complaint, including but not limited to those set forth in paragraphs 44-57 of the Amended Complaint in conjunction with the facts plead in the First through Fourth Counts reveal that Plaintiffs have properly plead cognizable claims for fraud[3] and negligent misrepresentation[4] that satisfy the elements of said causes of action.

---

[3] The elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 610 (1997). All of these elements are satisfied by the facts plead throughout the amended complaint, including but not limited to paragraphs 44-57 and those facts set forth in the First and Second Counts of the Amended Complaint and also throughout the facts plead in the initial Complaint, including those in paragraphs 42-53 and in the First Count. (See Exhibits "A" and "B" to the Eichhorn Cert.)

[4] Negligent misrepresentation is shown by a "false statement negligently made, and on which justifiable reliance is placed." <u>H. Rosenblum, Inc. v. Adler</u>, 93 N.J. 324, 334 (1983). The "justification for the imposition of a duty of care upon the speaker is found in the respective positions of the one making the representation and the relying party, the

**B.    Plaintiffs' Complaint Plead Their Claims For Fraud And Negligent Misrepresentation With Particularity.**

Defendants incorrectly assert that Plaintiffs' Claims for fraud should be dismissed for their failure to meet the pleading requirements of Fed.R.Civ.P. 9(b).

Under Fed.R.Civ.P. 9(b) "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged". Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984). "The Court should not focus exclusively on the Rule's particularity language, Christidis v. First Penn. Mortgage Trust, 717 F.2d 96, 100 (3d Cir.1983), and must consider whether the pleading provides adequate notice to an adverse party to enable it to prepare a response." Shapiro v. Barnea, No. CIV. 06-811 (JBS), 2006 WL 3780647, at *5 (D.N.J. Dec. 21, 2006). "It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Seville, 742 F.2d at 791.

The "Third Circuit has repeatedly affirmed that Rule 9(b) has some flexibility, holding that 'Rule 9(b) was not intended to require a plaintiff to know every detail before he or she could plead fraud,' [citation omitted] and recognizing that the particularity requirement of the rule is 'relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control.'" Capital Inv. Funding, LLC v. Lancaster Grp. LLC, No. CIV.A. 8-4714 JLL, 2015

---

former purporting to exercise the skill and competency compatible with his profession or calling, the latter openly placing his faith on such reputed skill." Id.  "There must be knowledge, or reason to know, on the part of the speaker that the information is desired for a serious purpose, that the seeker of the information intends to rely upon it, and that if the information or opinion is false or erroneous, the relying party will be injured in person or property." Id. All of these elements are satisfied by the facts plead throughout the amended complaint, including but not limited to paragraphs 44-57 and those facts set forth in the First, Second and Fourth Counts of the Amended Complaint and also throughout the facts plead in the initial Complaint, including those in paragraphs 42-53 and in the First Count. (See Exhibits "A" and "B" to the Eichhorn Cert.)

WL 4915464, at *6 (D.N.J. Aug. 18, 2015) (holding that "a previous decision of this court found the fraud allegations lacking under Rule 9(b), but the Complaint has been amended for a third time and specifically includes greater detail to address this failing. This case has idled for years now, it is time to proceed into factual inquiry concerning what really occurred in this business endeavor gone wrong. For these reasons, Katz and Wiltshire's Motion to Dismiss is denied.")

"Under 9(b), although a plaintiff must plead with particularity the circumstances surrounding the alleged fraud, a plaintiff need only plead generally with respect to the defendant's state of mind." State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC, 646 F. Supp. 2d 668, 682 (D.N.J. 2009). Thus, even "general allegations regarding Defendant's knowledge and intent to deceive Plaintiff are sufficient under 9(b)." Id.

A review of the facts plead throughout the Amended Complaint, including but not limited to paragraphs 44-57 and those facts set forth in the First through Fourth Counts of the Amended Complaint and also throughout the facts plead in the initial Complaint, including those in paragraphs 42-53 and in the First Count show that the claims of fraud and negligent misrepresentation are plead with specificity. (See Exhibits "A" and "B" to the Eichhorn Cert.) Among other things the Plaintiffs' complaints set forth that the misrepresentations were made in between May and July 2013, just prior to the execution of the Letter of Understanding on December 4, 2013 and in January 2014. (See paragraph 13-17, 40-57 and the First through Fourth Counts of Exhibit "B" and paragraphs 13-17, 40-53 and the First Count of Exhibit "A" to the Eichhorn Cert.) The complaints further sets forth that the misrepresentations were specifically made by Flanagan, and in some cases at specific meetings. Id. The complaints go into detail as to the nature and substance of the misrepresentations and sets forth that Flanagan

knew they were false at the time she made them, with the intent that Plaintiffs rely upon same.

Id.

The Amended Complaint and the initial Complaint clearly plead the claims of fraud and negligent misrepresentation with the specificity required by Fed.R.Civ.P. 9(b).

**POINT IV**

**PLAINTIFFS' ASSERTS COGNIZABLE AND VALID CLAIMS AGAINST FLANAGAN AND THE MOTION SEEKING TO DISMISS THE CLAIMS AGAINST HER SHOULD BE DENIED**

**A.   PLAINTIFF HAS PLED COGNIZABLE CLAIMS AGAINST DEFENDANT FLANAGAN INDIVIDUALLY FOR THE WRONGS THAT ARE ALLEGED THAT SHE COMMITTED DIRECTLY AGAINST PLAINTIFFS.**

**1.   The Claims Are Cognizable Against Flanagan Individually For Fraud And Negligent Misrepresentation Are Valid As To Her Personally.**

The Amended Complaint makes it clear that it was Flanagan personally and exclusively who made the fraudulent and negligent misrepresentations to Plaintiffs, specifically Prakash. (See paragraph 13-17, 40-57 and the First through Counts of Exhibit "B" and paragraphs 13-17, 40-53 and the First Count of Exhibit "A" to the Eichhorn Cert.) Flanagan personally misrepresented to Prakash that she would promote his business in return for his assistance to her and ALC. (See paragraphs 13-17 and the First Counts of both Exhibit "A" and "B" of the Eichhorn Cert.) It was Flanagan who personally made the misrepresentations to Prakash about the profits of ALC in 2013 and purported profit projections for 2014. Id. at paragraphs 40-57 and the First Counts. It was Flanagan who personally misrepresented to Prakash the compensation he would he receiving in order to induce him to provide his service to Defendants. Id.

As plead in the complaints, it is Flanagan who individually made these fraudulent statements to Plaintiffs, Flanagan could be found personally liable for these frauds. Therefore, the claims of Plaintiffs against Flanagan should not be dismissed.

15

**2. The Claims Are Cognizable Against Flanagan Individually For Breach Of The Agreement She Made Directly With Mr. Rao To Promote His Business In Return For His Assistance With Her Business.**

Flanagan personally agreed to provide Prakash with assistance with the promotion of the business of VKS. (See paragraphs 18-20 and paragraph 2 of the Fifth Count of Exhibit "B" and paragraphs 18-20 and paragraph 2 of the Third Count of Exhibit "A" to the Eichhorn Cert.) It is Flanagan, not ALC, that breached this agreement. Id. Flanagan in her individual capacity could be found liable for this breach.

**B. THE FACT THAT ALC IS AN LLC, DOES NOT PROTECT FLANAGAN FROM LIABILITY TO INDIVIDUAL WRONGS SHE COMMITTED AGAINST THE PLAINTIFFS.**

First, it is important to point that nowhere in the Complaint or Amended Complaint do Plaintiffs allege or assert in that any Plaintiff was a member of ALC, nor is such a claim true. Such a claim is made up solely by Defendants in their motion and is not pled in the Complaint which is the subject of Defendants' F.R.C.P. 12(b)(6) motion. The Letter of Understanding, which Defendants advised was not valid, (See paragraph 41 of Exhibit "B" and paragraph 112 of Exhibit "A" to the Eichhorn Cert.) does not provide for any Plaintiff with a membership interest in ALC. (See paragraph 43 of Exhibit "B" to the Eichhorn Cert.; see also Exhibit "A" to Defendants' Motion papers.)

Secondly, it is undisputed by Defendants, that Flanagan is liable for any actions she did in her individual capacity. Therefore, Flanagan is personally liable for her fraudulent representations and negligent misrepresentations she made to Plaintiffs, and she is also individually liable for agreements she made with Plaintiffs in which ALC was not a party.

Furthermore, at a minimum it is premature at this juncture to make a dispositive determination as to whether the acts of Flanagan were within her individual capacity or that of member of ALC. Kenney v. M2 Worldwide, LLC, No. CIV.A. 12-1059 SRC, 2013 WL 592149, at *5 (D.N.J. Feb. 13, 2013) (holding that such a determination is best decided on a motion for summary judgment.)

Third, Defendants' assert that ALC never made a profit and ALC is likely insolvent. There is no evidence that ALC has any assets, nor that it followed corporate formalities or operated as a corporation. (See facts plead in the Twelfth Count of Exhibit "B" to the Eichhorn Cert.) The facts as plead show that ALC was operated by Flanagan as a conduit to steal valuable trade secrets and work-product from Plaintiffs. (See facts plead in paragraphs 40-57 and the First, Second and Twelfth Counts of Exhibit "B" to the Eichhorn Cert.)

The law provides that "piercing the corporate veil is an equitable doctrine designed to provide a remedy for an underlying wrong, where a remedy would otherwise be unenforceable because the primary defendant is a corporation without assets to pay it." 701 Penhorn Ave. Associates, Inc. v. J. Fanok Holdings, LLC, No. A-2921-11T3, 2013 WL 709125, at *2 (N.J. Super. Ct. App. Div. Feb. 28, 2013) (citing Verni v. Harry M. Stevens, Inc., 387 N.J.Super. 160, 199 (App.Div.2006)). "The purpose of the doctrine of piercing the corporate veil is to [also] prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." Id. quoting State v. Ventron Corp., 94 N.J. 473, 500 (1983). Finally, "[i]n an appropriate case, the doctrine may be applied to hold an individual liable for an otherwise-uncollectible judgment against a corporation." Id. citing Marascio v. Campanella, 298 N.J.Super. 491, 502 (App.Div.1997).

Finally, "[i]t is well settled that a court of equity is always concerned with substance and not merely form, and thus, it will go behind the corporate form where necessary to do justice." Walensky v. Jonathan Royce Int'l, Inc., 264 N.J. Super. 276, 283 (App. Div. 1993). A finding of equitable fraud will result in the piercing of the corporate veil. Id. Equitable fraud "includes all acts, omissions or concealments which involve a breach of a legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another." Id. Under such circumstances "our courts have not hesitated to pierce the corporate veil of a closely held corporation in order to impose personal liability." Id.

The complaints plead in detail all the fraudulent acts that Flanagan engaged in order to induce Plaintiffs to provide her and ALC with their services, including fraudulently misrepresenting facts about profits, contracts with customers, business prospects and plans to compensate Plaintiffs for their services. Flanagan used an apparently insolvent company, ALC as a conduit to commit her frauds against Plaintiffs and to steal away their work product, trade secrets and services without compensating them a penny for same.

Plaintiffs have clearly pled sufficient facts and claims that if successful would pierce the corporate veil and impose liability on Flanagan individually. Therefore, the claims against Flanagan should not be dismissed.

### C. THE LAW REGARDING PARTNERSHIPS IS NOT APPLICABLE TO THE WITHIN MATTER AND PROVIDES NO BASIS FOR DISMISSAL OF PLAINTIFFS' COMPLAINT.

Contrary to the "facts" asserted by Defendants in their motion papers there was no partnership between any of the Plaintiffs and any of the Defendants. The Letter of Understanding referred to by Defendants was not a partnership agreement. Furthermore, as plead in paragraph 41, of the Amended Complaint and paragraph 112 of the initial Complaint, Defendants have

previously advised that the Letter of Understanding was not a valid nor enforceable. Thus, to the extent the Letter of Understanding provided any rights to Plaintiffs, same has yet to be determined, and is clearly in dispute.

The reference of Prakash, a non-lawyer, in one email to the "partnership" was merely a reference to the work the parties had done together for the prior 13 plus months, and was not a reference to an actual legal partnership and had no legal connotation. (See paragraph 113 of Exhibit "B" to the Eichhorn Cert.) The parties were <u>not</u> "co-owners" in any business and in fact their relationship was not that of a partnership, but one of employee-employer, or that of independent contractor.

In fact, Prakash was promised by Flanagan to be compensated for the services he provided in part via profit sharing, and in part via a wage of $225,000. (See paragraph 56 of Exhibit "B" and paragraph 52 of Exhibit "A" to the Eichhorn Cert.) Thus, it is clear under N.J.S.A. Sec. 42:1A-10(a)(3)(b) the promised sharing of profits with Prakash did not create a partnership because they were a form of compensation he was receiving for the services he was providing.

The whole "partnership" argument is created by Defendants in their further attempt to have Flanagan avoid potentially being held liable for her own actions. The facts argued by Defendant are not pled in the Complaint. The actual facts pled in the Complaint and amended Complaint do not support Defendants' argument that Flanagan should avoid potential liability based on the partnership law and do not support the dismissal of Plaintiffs' claims against her.

19

<u>POINT V</u>

**NONE OF PLAINTIFFS' CLAIMS ARE BARRED BY THE ECONOMIC LOSS DOCTRINE**

In Point IV of Defendants' Motion Brief they assert that Counts One (for Fraud and Negligent Misrepresentation), Two (for Promissory Estoppel), Six (for Theft of Services and Intellectual Property and Conversion) and Eight (for Negligence and Breach of Fiduciary Duty) of the initial Complaint should be dismissed under the economic loss doctrine.

**A.    IT IS PREMATURE TO APPLY ECONOMIC LOSS DOCTRINE TO PLAINTIFFS' CLAIMS**

There is a dispute as to whether there were any valid contracts between Defendants and Plaintiffs. As plead by in the complaints Defendants asserted that the Letter of Understanding (which is the only potential written contract between the parties) was not valid. Furthermore, it is not known at this juncture whether the Court will find that there exists valid contracts between parties.

Where there is uncertainty as to whether a contract plead in a complaint will ultimately be found valid it is premature to grant a motion to dismiss based on the economic loss doctrine. See <u>Capital Inv. Funding, LLC v. Lancaster Grp. LLC</u>, No. CV 08-4714 (JLL), 2015 WL 5882785, at *2 (D.N.J. Oct. 6, 2015). In fact, the court has held that even though "discovery may ultimately prove Moving Defendants' contention that the economic loss doctrine applies here. . . the Court cannot definitively state prior to discovery that the doctrine indeed applies" and therefore the "the motion [to dismiss] shall be denied." <u>Id</u>.

Here, in order to address the uncertainty of whether the Court will ultimately determine whether there were valid contracts, Plaintiffs in fact plead both contract claims and quasi-contract claims, and Plaintiffs also asserted certain tort claims in the alternative to the contract

claims. As it is clearly premature to determine if the economic loss doctrine applies Defendants'

Motion to Dismiss seeking to dismiss Plaintiffs' tort claims based on the doctrine should be

denied.

**B.  AS PLAINTIFFS HAVE PLEAD THEIR TORT CLAIMS IN THE ALTERNATIVE, DEFENDANTS' EFFORT TO UTILIZE THE ECONOMIC LOSS DOCTRINE SHOULD BE DENIED.**

Fed.R.Civ.P. 8 provides in relevant part as follows:

**(a) Claim for Relief.** A pleading that states a claim for relief must contain: . . .

> (3) a demand for the relief sought, <u>which may include relief in the alternative or different types of relief</u>. . .

**(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.**
**(1) In General.** Each allegation must be simple, concise, and direct. No technical form is required.

> **(2) Alternative Statements of a Claim or Defense.** <u>A party may set out 2 or more statements of a claim or defense alternatively</u> or hypothetically, either in a single count or defense or in separate ones. <u>If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient</u>.

> ***(3) Inconsistent Claims or Defenses.*** <u>A party may state as many separate claims or defenses as it has, **regardless of consistency**</u>. [emphasis added]

The "Federal Rules of Civil Procedure permit a plaintiff to plead alternative, or even

inconsistent, causes of action. Fed.R.Civ.P. 8(d)." <u>IDT Corp. v. Unlimited Recharge, Inc.</u>, No.

CIV.A. 11-4992 ES, 2012 WL 4050298, at *6 (D.N.J. Sept. 13, 2012).Thus, "[w]hile a plaintiff

may not recover on inconsistent theories, he may include them in the complaint." <u>Id</u>. "Therefore,

while Plaintiffs may not recover on both their contract claims and tort claims, [that are overlap

under the economic loss doctrine] both claims may be included in the complaint and can survive

a motion to dismiss." <u>Id</u>. If the Court finds at a later date "that the disputed contracts are valid,

Defendants may revisit this argument at a later stage in this litigation" to address the application

of the economic loss doctrine. <u>Id</u>.

The courts "will not dismiss the claim under the economic loss doctrine because the economic loss doctrine does not apply when [tort claims such as] fraud is an alternative claim, permitted by Fed.R.Civ.P. 8(a)". Shapiro v. Barnea, No. CIV. 06-811 (JBS), 2006 WL 3780647, at *4 (D.N.J. Dec. 21, 2006); see also Berger & Montague, P.C. v. Scott & Scott, LLC, 153 F.Supp.2d 750, 754 (E.D.Pa.2001) ("even if the 'gist of action' test and 'economic loss doctrine' were to bar Berger from proceeding simultaneously on breach of contract and **conversion** claims, Berger can still plead both claims as alternative theories of liability...." [emphasis added]). Where the Complaint notes, as here, that the tort claim is an "alternative" claim and there is uncertainty as the validity of the contract the economic loss doctrine should not apply. Id.

In Lo Bosco v. Kure Eng'g Ltd., supra at 1032-33, the Court held that since it had yet to be litigated whether there was intent to enter an agreement and whether there was reasonable and detrimental reliance, the court held "that the counts based on tortious misrepresentations of fact state a valid alternative theory of relief" and defendant's motion to dismiss was denied.

Plaintiffs' Amended Complaint specifically identifies (either in the headings or in the body of the counts) that the Second through Forth and Eighth through Tenth Counts are being plead in the alternative to Plaintiffs' breach of contract claims. Furthermore, to the extent any of the Counts plead are inconsistent with Plaintiffs' breach of contract claims they should also be considered to have been pled in the alternative. Therefore, Plaintiffs' tort claims should not be dismissed based on the economic loss doctrine.

## C.   CLAIMS FOR FRAUD IN THE INDUCEMENT ARE NOT BARRED UNDER THE ECONOMIC LOSS DOCTRINE

As to claims of fraud the "courts have continued to affirm 'the conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the

promisor to do what he has promised." <u>Ross v. Celtron Int'l, Inc.</u>, 494 F. Supp. 2d 288, 298 (D.N.J. 2007).  In order to clarify this distinction in the types of fraud claims Plaintiffs are pursuing against the defendants, Plaintiffs have specifically identified that their First Count of their Amended Complaint sets forth claims for fraud in the inducement, and in the Second Count it sets forth claims for fraud in the performance.

"New Jersey federal and state courts permit fraud claims to proceed with a breach of contract claim when the fraud arises out of fraud in the inducement or pre-contractual misrepresentations." <u>Ross v. Celtron Int'l, Inc.</u>, 494 F. Supp. 2d at 298. Because of this fact the, New Jersey federal court has concluded that "the New Jersey Supreme Court would likely recognize a fraud in the inducement exception to the economic loss doctrine." <u>G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.</u>, 18 F. Supp. 3d 583, 590-93 (D.N.J. 2014). Simply put "[t]he economic loss doctrine does not apply to statements extrinsic to the performance of the contract, such as fraudulent inducement. <u>Freedom Waste Sols., Inc. v. Family Dollar</u>, No. 15-CV-4756 (SRC), 2015 WL 5996183, at *4 (D.N.J. Oct. 14, 2015).

In explaining the fraudulent inducement exception to the economic loss doctrine, the court in <u>G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.</u>, held as follows:

> The distinction between fraud in the inducement and fraud in the performance of a contract remains relevant to the application of the economic loss doctrine in New Jersey. **Courts have continued to affirm the conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the promisor to do what he has promised**. No decision has formally negated the distinction between fraudulent inducement extraneous to the contract and fraud in its subsequent performance.
>
> New Jersey federal and state decisions that have permitted a fraud claim to proceed with a breach of contract claim generally appear

to have involved a fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations. . .

The Complaint specifically alleges, "*[d]uring its negotiations with GI,* Inserts East asked GI and Kiley to confirm that the model GI was offering to sell was indeed, a N400B press. Kiley confirmed and represented unequivocally that the GI Press was a N400B." (Compl. ¶ 14) (emphasis added) **Moreover, the alleged facts support an inference <u>that Inserts East would not have contracted to purchase an N400 press given its knowledge of the historical problems with that model</u> (Compl. ¶ 13), thereby supporting a conclusion that <u>the alleged misrepresentation induced Inserts East to enter into the contract</u> with GI**. Such representations are necessarily "extraneous to the contract," . . .. Accordingly, the Court holds that the fraud in the inducement exception to the economic loss doctrine applies to Inserts East's common law fraud claim. GI's Motion to Dismiss on this ground will be denied. [emphasis added] <u>Id</u>. at 590-93.

Even if the Court was to conclude that the economic loss doctrine apply it would clearly not bar Plaintiffs' claim for fraud in the inducement. While at some later date Defendants may claim they actually intended to fulfill the various contracts and thus there was no fraud in the inducement, this is not what is pled in the Amended Complaint. Plaintiffs do not believe this will be the case as the evidence will show that after the contracts were entered, Flanagan later denied the existence and/or validity of the same contracts.

Finally, as a further basis for not barring tort claims under the economic loss doctrine, the courts have pointed to the fact that "the contract between the parties does not explicitly limit the remedies available for breach. Thus, allowing Plaintiff to pursue a tort remedy would not contravene the intent of the parties." <u>Fairlawn Indus. Properties, LLC v. H.J. Heinz Co., L.P.</u>, No. 2:15-CV-1904 WHW-CLW, 2015 WL 4640624, at *5 (D.N.J. Aug. 4, 2015). Here there are no contractual provisions limiting the remedies available to the Plaintiffs, and thus this is a further reason why the Plaintiffs should be permitted to pursue their tort claims.

**D.   THE ECONOMIC LOSS DOCTRINE DOES NOT BAR PLAINTIFFS' TORT CLAIMS IN THE INITIAL COMPLAINT OR IN THE AMENDED COMPLAINT FOR THEFT/CONVERSION OF TRADE SECRECTS AND SERVICES.**

In <u>Kam Int'l v. Franco Mfg. Co. Inc.</u>, No. CIV.A. 2:10-02733, 2010 WL 5392871, at *4-5

(D.N.J. Dec. 22, 2010), the court in denying the movant's motion to dismiss the count in the

pleading for conversion held as follows:

> Defendant argues that Count Six must be dismissed because a "mere contractual obligation" cannot support a claim for conversion, and because the count is barred by the economic loss doctrine. [citation omitted] Both positions are unavailing.
>
> A conversion claim in New Jersey is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." [citation omitted] Defendant's argument in support of dismissal of this claim is that "an action for conversion will not lie in the context of a mere debt." *Scholes Elec. & Comm., Inc. v. Fraser,* 2006 WL 1644920 (D.N.J. June 14, 2006). However, in *Scholes,* the allegedly converted property was money. Because a monetary loss can be repaid in whole by other money, it was deemed a mere debt. Therefore, the court ruled that only where there was a requirement that the "identical money" be repaid, could an action for conversion lie. *Id.*
>
> Here, the allegedly converted property was not money but rather textiles. Therefore, **Plaintiff's claim for conversion does not allege a mere debt, but rather the unauthorized assumption of specific property that is not interchangeable with other similar property** (unlike money, which typically is interchangeable with other money). **While Plaintiff has also alleged a breach of contract claim seeking monetary damages, Plaintiff is allowed to plead in the alternative and any inconsistencies between the two theories do not render either one invalid. Fed.R.Civ.P. 8(e)(2).** . . [emphasis added]. *Id.*

Plaintiffs are not in large part alleging in their pleadings the conversion of money. The

Count for Conversion and Theft specifically allege that "Defendants have wrongfully and

without authorization taken control and possession of the services, monies, products, trade

secrets  and intellectual property belonging to Plaintiffs and have used same for Defendants'

advantage."   (See Eighth Count of Exhibit "B" and Sixth Count of Exhibit "A" to the Eichhorn

Cert.)

      Plaintiffs' trade secrets and work product are specifically identified in the complaints to

include, but are not limited to:

    (1)    The "New Market Research Model" developed by Prakash;
    (2)    The "Newton" and "Newton brand ROI" phrases coined by Prakash;
    (3)    The "data density model" developed by Prakash;
    (4)    The intellectual property identified in detail in paragraph 73 of the Amended Complaint;
    (5)    The logo and website developed by Ananth Rao; and
    (6)    All the other work product provided by Prakash, including statistical work, work on the smart room, etc... (See paragraphs 58-84 and 97-107 of Exhibit "B" to the Eichhorn Cert.)

      Plaintiffs' trade secrets and work product are "not interchangeable with other similar

property" and claims for the unlawful taking of same are not duplicative of the breach of contract

claims. Furthermore, the law is clear that these claims can be plead in the alternative. Either way,

it is clear that the economic loss doctrine does not bar Plaintiffs' claims for conversion and theft

of trade secrets and services.

## POINT VI

**TO THE EXTENT ANY OF PLAINTIFFS' CLAIMS ARE DISMISSED, THEY SHOULD BE DISMISSED WITHOUT PREJUDICE TO PLAINTIFFS' RIGHT TO AMEND THEIR COMPLAINT.**

      To the extent any claim set forth in Plaintiffs' Complaint or Amended Complaint is

dismissed, such dismissal should be without prejudice in general and specifically without

prejudice to plaintiffs right "to correct any deficiencies" in the complaint. See Berk v. HMC, No.

CIV. A. 07-181 JLL, 2009 WL 467849, at *7 (D.N.J. Feb. 24, 2009).

      While Plaintiffs do not believe any of the claims or counts in their Amended Complaint

or in their initial Complaint (to the extent leave to amend is not granted) should be dismissed, to

the extent that any are dismissed, such dismissal should be without prejudice and Plaintiffs should be provided leave to file amendments to correct any deficiency that was the cause of the dismissal.

## **CONCLUSION**

For the reasons set forth above Plaintiff's Cross-Motion for Leave to Amend Should be granted and Defendants' Motion to Dismiss in part the Complaint should be denied in full.

Respectfully submitted,
SOKOL BEHOT, LLP


/s/ *Daniel S. Eichhorn*
DANIEL S. EICHHORN

Dated: May 2, 2016