<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| PRAKASH V. RAO, ANANTH RAO and VKS ASSOCIATES, LLC, | : : : | Civil Action No. 15-3126 (SRC) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| ANDERSON LUDGATE CONSULTING, LLC, TRICIA FLANAGAN, et al., | : : : | |
| Defendants. | : : | |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court upon two motions: (1) the motion to dismiss Counts One and Two of the Third-Party Complaint pursuant to Rule 12(b)(6) by Third-Party Defendant Vistage International ("Vistage") [Docket Entry 48]; and (2) the motion to dismiss Count Three of the Third-Party Complaint pursuant to Rule 12(b)(6) filed by Third-Party Defendant Nicholas Kouyialis ("Kouyialis") [Docket Entry 50]. Third-Party Plaintiffs Anderson Ludgate Consulting, LLC ("ALC") and Tricia Flanagan ("Flanagan") oppose the motions [Docket Entries 57, 58]. The Court has considered the papers filed by the parties and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court will grant both motions to dismiss.

**I.   BACKGROUND**

This case arises out of a business dispute between Plaintiff Prakash V. Rao ("PR") and Defendant Tricia Flanagan ("Flanagan"). PR and Flanagan met while both were members of Vistage International ("Vistage"), a group that brings together business leaders once a month to

share ideas on how to grow their businesses, problem-solve, and strategize.  (Answer ¶ 2; (Countercl. ¶¶ 5, 6).  At the time, PR was the owner of his own business, VKS Associates, LLC ("VKS"), and Flanagan was the Chief Executive Officer of Anderson Ludgate Consulting, LLC ("ALC").  (Compl. ¶¶ 5, 10).  According to Flanagan, PR approached her after he heard her discussing ALC at a Vistage meeting and offered his services as a statistician to ALC.  (Answer ¶¶ 2-6, 10-11).  ALC agreed to use PR's services and took PR in as a "member or partner."  (Answer ¶ 15).  PR claims that he then developed methods for quantifying data, obtaining pharmaceutical market research contracts, and gaining non-pharmaceutical marketing clients for ALC.  (Compl. ¶¶ 16, 31, 81).

This lawsuit arises from PR's assertion that ALC and Flanagan failed to compensate him and his son for the work they did for ALC.  (Compl. ¶¶ 1-5, 10, 13, 94, 107, 111).  According to PR, he and Flanagan came to a written agreement in which PR was to receive one third of ALC's profits as compensation.  (Compl. ¶ 40; Answer ¶ 20).  PR claims that ALC provided him with a schedule of false and inflated projections of ALC's profits.  (Compl. ¶¶ 40-49).  Thus, he claims he was never compensated as promised.[1]

After PR filed his Complaint, Defendants ALC and Flanagan brought a Third-Party Complaint against Vistage and an individual named Nicholas Kouyialis, among others.  Nicholas Kouyialis was a "member or partner" of ALC and a certified public accountant, who was responsible for preparing ALC's financial projections.  (Third-Party Compl. ¶¶ 28-29).  Third-Party Defendants, Vistage and Kouyialis, now move to dismiss the claims against them.

---

[1] PR alleges that ALC failed to compensate him not only in the form of a profit distribution, but also in the form of a salary.  (Compl. ¶¶ 47, 52, 88).  Additionally, he claims that ALC failed to compensate his son for creating ALC's website.  (Compl. ¶¶ 94, 95, 103, 111).

## II. LEGAL STANDARD

A complaint will survive a motion under Rule 12(b)(6) if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Following *Iqbal* and *Twombly*, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). While a court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Fowler*, 578 F.3d at 210-11; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Iqbal*, 556 U.S. at 678. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents, and matters of public record. *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003).

### III.   ANALYSIS

#### a.   VISTAGE'S MOTION TO DISMISS THE BREACH OF CONTRACT CLAIM

In Count One of its Third-Party Complaint, ALC and Flanagan bring a breach of contract claim against Vistage. The theory behind their breach of contract claim is that "Ms. Flanagan's membership contract with Vistage and/or Vistage's bylaws, policies, and/or procedures" contained a provision prohibiting solicitation, and that Vistage failed to enforce this provision when PR solicited Flanagan for business. (Third-Party Compl. ¶¶ 16-19).

To assert a prima facie breach of contract claim under New Jersey law, a plaintiff must demonstrate "that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito,* 392 N.J. Super. 245, 265 (App. Div. 2007). The New Jersey Supreme Court has held that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan,* 128 N.J. 427, 435 (1992) (quoting *West Caldwell v. Caldwell,* 26 N.J. 9, 24-25 (1958)).

Here, ALC and Flanagan fail to state a breach of contract claim for two reasons. First, ALC and Flanagan fail to present any facts that show that a contract existed between Vistage and Flanagan in which Vistage promised to enforce and protect its members from solicitation. ALC and Flanagan point to language in the membership application that states that members must "maintain strict confidentiality regarding all issues shared among members" as evidence of an anti-solicitation agreement. (Thomas Dec., Ex. C, at 2, ¶ 5).[2] But, this language does not

---

[2] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3rd Cir.1993).

prohibit solicitation and merely states that members should not disclose confidential information to people other than Vistage members.  Thus, ALC and Flanagan fail to show that there was a reasonably certain term in the membership application that Vistage would protect its members from solicitation.[3]  Moreover, ALC and Flanagan present no other evidence of a clause stating that Vistage would prevent solicitation elsewhere in any contract, bylaw, policy, or procedure.

Second, Vistage was an organization that encouraged collaboration amongst its members and did not prevent its members from working together.  ALC and Flanagan's Third-Party Complaint admits that "strategic partnerships and alliances were encouraged by Vistage". (Third-Party Compl. ¶ 7).  Thus, their claim that Vistage prohibited solicitation of business is internally inconsistent.  In sum, because ALC and Flanagan provide no facts showing that a reasonably certain anti-solicitation provision existed and because the existence of an anti-

---

[3] In ALC and Flanagan's opposition brief, they suggest that Vistage provided members with a welcome kit that "may contain additional terms" and may discuss the anti-solicitation and confidentiality policies. (Def.'s Opp. Br. to Vistage's Mot. at 5 n.1).  ALC and Flanagan do not provide this welcome kit anywhere in the Third-Party Complaint or in their briefs, but they suggest that their breach of contract claim should not be dismissed because of what the welcome kit might contain.  The Court does not give weight to the suggestion that the welcome kit contains an anti-solicitation provision because it is based on mere speculation.  *See Katz v. Holzberg*, No. 13-1726, 2013 WL 5946502, at *5 (D.N.J. Nov. 4, 2013) (quoting *Ogbin v. GE Money Bank,* No. 10-5651, 2011 WL 2436651, at *4 n.3 (D.N.J. June 13, 2011) ("A plaintiff's request for discovery cannot serve as a basis to deny a defendant's motion to dismiss, as the filing of such a motion serves to protect a defendant from being subjected to discovery, during which a plaintiff hopes that facts will be unearthed to support plaintiff's speculation."); *see also Giovanelli v. D. Simmons Gen. Contracting,* Civ. No. 09-1082, 2010 WL 988544, at *5 (D.N.J. Mar. 15, 2010) ("Discovery . . . cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts he has not yet pleaded.").  Moreover, Vistage provided the welcome kit with its reply brief and the Court cannot find an anti-solicitation provision within it.  The welcome packet states explicitly that Vistage encourages members to "[p]articipate in the Vistage marketplace to get the word out to members about what your business is all about," "[n]etwork with fellow business leaders, members, and Chairs from your region," and "[e]xplore new business opportunities within the greater Vistage community." (Thomas. Supplemental Dec., Ex. D, at 4-5).  Thus, the welcome kit does not support ALC and Flanagan's claim that there was an anti-solicitation provision and if anything, it further emphasizes that collaboration amongst Vistage members was encouraged.

solicitation provision is contradictory, the Court cannot draw a reasonable inference that Vistage breached the contract.  Thus, the Court will grant Vistage's motion to dismiss with prejudice.

ALC and Flanagan set forth a new theory for their breach of contract claim in their opposition brief.  There, they claim that Vistage breached its contract by failing to protect Flanagan from a breach of the confidentiality provision in the contract, which states that members must "maintain strict confidentiality regarding all issues shared among members." (Def.'s Opp. Br. to Vistage's Mot. at 2, 5; Thomas Dec., Ex. C, at 2 ¶ 5).  As an initial matter, the Court does not consider this allegation because it was never set forth in the Third-Party Complaint.  In the Third-Party Complaint, ALC and Flanagan only allege breach of an anti-solicitation provision. (Third-Party Compl. ¶¶ 7-22).  It is well-established that a plaintiff cannot amend a pleading through a brief in opposition to a motion to dismiss.  *Federico v. Home Depot,* 507 F.3d 188, 201-02 (3d Cir. 2007).  Moreover, even if the Court allowed ALC and Flanagan to make the claim that Vistage failed to enforce a confidentiality provision of the contract, they do not adequately plead this claim.  The provision that ALC and Flanagan point to states that members cannot share confidential information with people outside of Vistage, but does not prohibit members of Vistage from discussing confidential information with one another.  ALC and Flanagan never claim that PR shared confidential information with anyone outside of Vistage, but only claim that PR discussed ALC's confidential information with Flanagan, who was a member of Vistage.   Because ALC and Flanagan fail to state that any confidential information was shared with a third party outside of Vistage, their breach of the confidentiality provision of the contract fails as well.

### b. VISTAGE'S MOTION TO DISMISS THE NEGLIGENT SUPERVISION CLAIM

Next, ALC and Flanagan claim that Vistage is liable for negligently supervising PR. To sustain a claim of negligent supervision, a plaintiff must allege all of the requirements for a negligence action in tort, including: duty, breach of duty, causation, and injury. *Worrall v. Veloric*, No. 11-3750, 2012 WL 3240153, at *4 (D.N.J. Aug. 7, 2012); *Worrall v. City of Atl. City*, No. 11-3750, 2014 WL 980575, at *3 (D.N.J. Mar. 13, 2014). In the context of a negligent supervision claim, some courts have found that a defendant has no duty to supervise if the plaintiff fails to allege that the defendant is an employer or has some other special relationship giving rise to the duty to supervise. *See Carmichael v. Carmichael*, No. 13-2409, 2014 WL 347804, at *4 (D.N.J. Jan. 31, 2014) (holding that the negligent supervision claim fails because plaintiff failed to plead that the defendant was an employer with a duty to supervise). Moreover, in order to show that a duty to supervise exists, "[i]n the presence of statutory immunity or the absence of a duty otherwise imposed, there must be some conduct, no matter how minute, evidencing an intention to supervise by way of monitoring, entering into or becoming a part of the activity itself from which the injury sprang." *Morris v. City of Jersey City*, 179 N.J. Super. 460, 464 (App. Div. 1981) (denying liability where the minor plaintiff was injured playing basketball in the public school gym after school hours because the board of education simply provided the space, but did not evidence an intent to supervise). If the plaintiff is able to show that there is a duty to supervise, the plaintiff must also bring evidence that: (1) the supervisor "knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes" of the supervisee, (2) the supervisor could "reasonably have foreseen that these qualities created a risk of harm to other persons," and (3) the supervisor's negligence "proximately caused the plaintiff's injuries." *Carmichael v. Carmichael*, 2014 WL 347804, at *4 (citing *Smith v.*

*Harrah's Casino Resort of Atl. City*, No. 0855-12T2, 2013 WL 6508406, at *3 (N.J. Super. Ct. App. Div. Dec. 13, 2013)).

Here, ALC and Flanagan fail to plead any facts showing that Vistage had a duty to supervise PR. Vistage was not an employer, but rather a committee that provided the space for business leaders to come together and discuss common problems. Furthermore, ALC and Flanagan fail to plead in its Third-Party Complaint that Vistage demonstrated an intention to monitor the business leaders' solicitation activity, especially since they encouraged collaboration amongst members. The fact that their policy prohibited the sharing of confidential information with third parties outside of Vistage does not mean that they were monitoring the discussion of confidential information among members of Vistage or monitoring whether members of Vistage were soliciting one another. ALC and Flanagan's Third-Party Complaint alleges threadbare allegations that Vistage knew that PR would solicit Flanagan, with no support. They do not allege that PR was unfit, incompetent, or dangerous in any way, or that Vistage could foresee a risk that PR would act in accordance with these qualities. Thus, ALC and Flanagan fail to plead a negligent supervision claim and this Court grants Vistage's motion to dismiss that claim with prejudice.

    c. **KOUYIALIS'S MOTION TO DISMISS THE COMMON LAW INDEMNIFICATION CLAIM**

Count Three of the Third Party Complaint seeks indemnification from Kouyialis to the extent that ALC and Flanagan are found liable for ALC's inaccurate financial forecasts. (Third-Party Compl. ¶ 35). Kouyialis moves to dismiss this claim.

The right to indemnification can be based on a contractual obligation or on the existence of a special legal relationship between the parties, in which case the obligation will be implied by

operation of law. *Ramos v. Browning Ferris Indus. of South Jersey,* 103 N.J. 177, 188-89 (1986); *Ruvolo v. U.S. Steel Corp.,* 133 N.J. Super. 362, 367 (Law Div. 1975). "For a relationship to be a 'special legal relationship' it must be 'sufficient to impose certain duties and [such that] a subsequent breach of those duties permits an implied indemnification." *Katz v. Holzberg*, No. 13-1726, 2013 WL 5946502, at *3 (D.N.J. Nov. 4, 2013) (citing *Ruvolo*, 133 N.J. Super. 362, 367). "[I]mplied indemnification by way of a special relationship is a 'narrow doctrine' that is not frequently stretched beyond the examples of principal-agent, employer-employee, lessor-lessee, and bailor-bailee." *Katz v. Holzberg*, 2013 WL 5946502, at *3 (quoting *SGS U.S. Testing Co., Inc. v. Takata Corp.,* No. 09-6007, 2012 WL 3018262, at *5 (D.N.J. July 24, 2012)). A "longstanding business relationship" is not enough to show that a special legal relationship exists for indemnification purposes. *Id.* at *3 n.4. Additionally, "[a]uditor-auditee is not one of the four traditional relationships that qualify as 'special legal relationships' under New Jersey law." *Katz v. Holzberg*, No. 13-1726, 2013 WL 5946502, at *3 (D.N.J. Nov. 4, 2013). Based on this case law, the district court held in *Katz v. Holzberg* that defendant board members who were responsible for presenting accurate and complete financial statements and cash flows of a company to auditors did not have a special relationship to those auditors for implied indemnification. *Id.*

ALC and Flanagan do not point to an indemnification provision in any contract here, but construing their claim liberally, attempt to make a claim of implied indemnification based on a special legal relationship of Kouyialis preparing ALC's accounting and financial records as a CPA. (Third-Party Compl. ¶¶ 28-32). But, ALC and Flanagan do not claim that Kouyialis was an agent, employee, lessee, or bailee. Kouyialis was simply a member or partner of ALC, LLC

who prepared their financial projections.  (Third-Party Compl. ¶¶ 28-32).[4]  As was the case in *Katz v. Holzberg,* a defendant does not have a special legal relationship just because that defendant is responsible for preparing the company's accounting or because the parties have a business relationship.  ALC and Flanagan do not point to any cases that show that there is a special legal relationship here.  Thus, the common law indemnification claim must be dismissed.

Even assuming arguendo that ALC and Flanagan could show that there was a special legal relationship, their claim for indemnification would still fail.  The right of indemnity "is a right which ensures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable."  *Ruvolo,* 133 N.J. Super. at 366.  Here, ALC and Flanagan fail to allege that Kouyialis acted with any initial negligence.  Although they state in the complaint that Kouyialis "intentionally prepared and maintained ALC's accounting and financial records," they never assert that Kouyialis did so negligently or fraudulently.  They simply state that he prepared the records, but never state that he did anything wrong.  Additionally, ALC and Flanagan do not claim that they have acted without active fault on their own part.  Thus, ALC and Flanagan have failed to adequately plead their indemnification claim and Kouyialis's motion to dismiss the claim is granted with prejudice.[5]

---

[4] Because the Court is already granting Kouyialis's motion to dismiss, the Court does not address Kouyialis's argument that he cannot be held liable as a member of the LLC.

[5] Kouyialis also argues that the third-party claim of common law indemnification must be dismissed because common law indemnification is an inchoate cause of action that does not accrue under New Jersey law until judgment is rendered on the underlying claim against the defendant.  This Court is not persuaded by this argument.  Federal Rule of Civil Procedure 14(a) governs the right to file a third-party complaint, and states that a third-party complaint may be filed against a person who "is or *may be* liable to him [third party-plaintiff] for all or part of the plaintiff's claim" (emphasis added).  Even if a right to indemnification has not yet accrued under state law, a defendant can still bring a third-party complaint for indemnification in federal court because of Rule 14(a).  *Tormo v. Yormark*, 398 F. Supp. 1159, 1175 n.20 (D.N.J. 1975).  Thus,

### IV. CONCLUSION

For the foregoing reasons, the Court will grant both motions to dismiss. An appropriate form of Order will be filed.

                                                              s/Stanley R. Chesler
                                                        STANLEY R. CHESLER
                                                        United States District Judge

Dated: February 21, 2017

---

while the Court ultimately concludes that ALC and Flanagan's indemnification claim fails as it is inadequately pled, the Court does not agree with Kouyialis that ALC and Flanagan could not bring this claim until the underlying judgment is entered.